UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>              Plaintiff,<br><br>       v.<br><br>JOHN DOE SUBSCRIBER ASSIGNED IP<br>ADDRESS 102.129.252.102,<br><br>              Defendant. | Case No.  24-cv-08575-EJD<br><br>**ORDER GRANTING APPLICATION<br>FOR LEAVE TO SERVE THIRD<br>PARTY SUBPOENA**<br><br>Re: ECF No. 8 |

Plaintiff Strike 3 Holdings, LLC ("Strike 3") filed this action against an unknown individual who allegedly used BitTorrent to illegally download and distribute Strike 3's copyrighted adult films.  Strike 3 now seeks a subpoena to compel non-party Spectrum to identify this unknown individual associated with the IP address 102.129.252.102.  Appl., ECF No. 8.

Based on Strike 3's submissions, the Court GRANTS leave to serve a subpoena with specific conditions provided below.  Because many courts have raised concerns that Strike 3 could be pursuing potentially innocent ISP account owners who are often embarrassed into early settlements, the identity of the Doe Defendant SHALL be protected unless and until further order by the Court.

## I.      BACKGROUND

Strike 3 owns the copyrights for several adult motion pictures that are associated with and distributed through various adult websites.  Compl. ¶¶ 1–3, ECF No. 1.  Using a specialized infringement detection system it developed, Strike 3 discovered the IP address of the Doe Defendant who allegedly infringed upon its copyrights.  *Id.* ¶¶ 28–29.  Specifically, the Complaint alleges that the Defendant used BitTorrent's file network to illegally download and distribute about twenty-seven (27) of Strike 3's copyrighted works.  *Id.* ¶¶ 29, 38; *see also id.*, Ex. A.

United States District Court
Northern District of California

1    On November 27, 2024, Strike 3 filed the Complaint in this case, asserting one claim of

2    direct copyright infringement and seeking an injunction and statutory damages. *Id.* at 7–8.

3    **II.    LEGAL STANDARD**

4    A court may authorize early discovery before the Rule 26(f) conference for the parties' and

5    witnesses' convenience and in the interests of justice. Fed. R. Civ. P. 26(d). Courts within the

6    Ninth Circuit generally consider whether a plaintiff has shown "good cause." *See, e.g.*, *IO Grp.,*

7    *Inc. v. Does 1–65*, 2010 WL 4055667, at *2 (N.D. Cal. Oct. 15, 2010); *Semitool, Inc. v. Tokyo*

8    *Electron Am., Inc.*, 208 F.R.D. 273, 275–77 (N.D. Cal. 2002). "Good cause may be found where

9    the need for expedited discovery, in consideration of the administration of justice, outweighs the

10   prejudice to the responding party." *Semitool*, 208 F.R.D. at 276.

11   In evaluating whether a plaintiff establishes good cause to learn the identity of a Doe

12   defendant through early discovery, courts examine whether the plaintiff:

13   (1) identifies the Doe defendant with sufficient specificity that the court can determine that

14   the defendant is a real person who can be sued in federal court;

15   (2) recounts the steps taken to locate and identify the defendant;

16   (3) demonstrates that the action can withstand a motion to dismiss; and

17   (4) shows that the discovery is reasonably likely to lead to identifying information that will

18   permit service of process.

19   *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578–80 (N.D. Cal. 1999) (citations omitted).

20   "[W]here the identity of alleged defendants [is not] known prior to the filing of a complaint[,] the

21   plaintiff should be given an opportunity through discovery to identify the unknown defendants,

22   unless it is clear that discovery would not uncover the identities, or that the complaint would be

23   dismissed on other grounds." *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999).

24   **III.   DISCUSSION**

25   **A.    Strike 3's Litigation History**

26   As this Court has done in its prior orders, before turning to the merits of the application,

27   the Court believes that an overview of Strike 3's litigation history would provide useful context

28   for the Doe Defendant or any other party who may receive this Order. *See Strike 3 Holdings, LLC*

2

1    *v. John Doe Subscriber Assigned IP Address 73.231.214.39*, No. 5:23-CV-05468-EJD, 2023 WL

2    8458262, at \*1 (N.D. Cal. Nov. 27, 2023).  Especially given the informational disparity and matrix

3    of undesirable options facing an ISP subscriber served with such a complaint, this context will

4    hopefully reduce the prejudice that individual may face.

5            Strike 3 has filed thousands of similar lawsuits and requests to subpoena subscriber

6    information from ISPs, such as Spectrum.  *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 23-CV-

7    04339-RS, 2023 WL 6542326, at \*2 (N.D. Cal. Sept. 22, 2023) (collecting cases).  At least one

8    federal judge has also openly characterized Strike 3 as a "copyright troll" that uses its "swarms of

9    lawyers [to] hound people who allegedly watch their content through BitTorrent."  *Strike 3*

10   *Holdings, LLC v. Doe*, 351 F. Supp. 3d 160, 161–62 (D.D.C. 2018) (describing the copyright

11   troll's strategy as "file a deluge of complaints; ask the court to compel disclosure of the account

12   holders; settle as many claims as possible; abandon the rest"), *rev'd and remanded*, 964 F.3d 1203

13   (D.C. Cir. 2020).

14          In practice, once subscribers are alerted that they are being sued for uploading

15   pornography, they may be pressured to quickly settle the matter to avoid the risk of having their

16   names publicly associated with the lawsuit or to avoid the costs of hiring an expensive copyright

17   legal specialist.  *See Strike 3 Holdings, LLC*, 2023 WL 6542326, at \*2; *see also Strike 3 Holdings*,

18   351 F. Supp. 3d at 162 ("[O]nce the ISP outs the subscriber, permitting them to be served as the

19   defendant, any future Google search of their name will turn-up associations with the websites

20   *Vixen*, *Blacked*, *Tushy*, and *Blacked Raw*.").  As a result, many innocent ISP subscribers would be

21   pressured to settle, even though several courts have observed that "ISP subscribers may not be the

22   individuals who infringed upon Strike 3's copyright."  *Strike 3 Holdings, LLC v. Doe*, No. 3:23-

23   CV-01977-LB, 2023 WL 4003723, at \*3 (N.D. Cal. May 9, 2023) (collecting cases); *see also*

24   *Strike 3 Holdings*, 351 F. Supp. 3d at 162 ("[I]nferring the person who pays the cable bill illegally

25   downloaded a specific file is even less trustworthy than inferring they watched a specific TV

26   show.").  Moreover, if a defendant moves to confront a "copyright troll" or exhibits any serious

27   resistance, the company can simply drop the case and avoid any unfavorable judicial rulings.  *See*

28   *Strike 3 Holdings*, 351 F. Supp. 3d at 162 ("These serial litigants drop cases at the first sign of

United States District Court
Northern District of California

3

1    resistance, preying on low-hanging fruit and staying one step ahead of any coordinated defense.").

2        **B.**    **Good Cause**

3        Turning to the merits of Strike 3's *ex parte* application, the Court finds that Strike 3 has

4    demonstrated good cause for this early discovery under the four *seescandy.com* factors.

5        First, the Court finds that Strike 3 has identified the Doe Defendant with sufficient

6    specificity for the Court to determine that the Doe Defendant is a real person who may be sued in

7    federal court.  The Complaint alleges that BitTorrent's protocols require the activity of a human

8    user to share movies within the BitTorrent network.  Compl. ¶¶ 18–27.  Strike 3 also used

9    Maxmind geolocation technology to trace the IP address it procured through its VXN Scan

10   detection software to a geographic location within this district.  *Id.* ¶ 9.

11       Second, Strike 3 has recounted the steps it took to locate and identify the Doe Defendant.

12   In addition to the geolocation and infringement detection technology already described, Strike 3

13   has attempted to associate the IP address with a defendant individual using various web search

14   tools and consultations with computer investigators and cyber security experts.  Appl. 10.

15       Third, Strike 3 has preliminarily demonstrated that its action can withstand a motion to

16   dismiss.  "Plaintiffs must satisfy two requirements to present a prima facie case of direct

17   infringement: (1) they must show ownership of the allegedly infringed material and (2) they must

18   demonstrate that the alleged infringers violate at least one exclusive right granted to copyright

19   holders under 17 U.S.C. § 106."  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159 (9th

20   Cir. 2007).  A copyright holder's rights under § 106 include the exclusive rights to reproduce,

21   distribute, publicly display, perform, and create derivative works of the copyrighted work.  17

22   U.S.C. § 106.  Here, Strike 3 alleges that it owns the copyrights to adult movies that the Doe

23   Defendant downloaded, copied, and distributed without permission.  Compl. ¶¶ 2, 4, 29, 44.

24   Accepting these allegations as true, the Court finds that the Complaint may withstand a motion to

25   dismiss.

26       Finally, Strike 3 has shown that the discovery it seeks is reasonably likely to lead to

27   identifying information that will permit service of process on the Doe Defendant.  Specifically,

28   Strike 3 only seeks the name and address of the Doe Defendant and has represented that the "only

United States District Court
Northern District of California

4

1　entity that can correlate the IP address to its subscriber and identify Defendant as the person

2　assigned the IP address is Defendant's ISP."  Appl. 6 (citing *BMG Rts. Mgmt. (US) LLC v. Cox*

3　*Commc'ns, Inc.*, 881 F.3d 293, 299 (4th Cir. 2018) ("[O]nly the ISP can match the IP address to

4　the subscriber's identity.")).

5　　　　In sum, the Court finds that Strike 3 has satisfied all four *seescandy.com* factors and

6　presented good cause for its requested expedited discovery.

7　　　　**C.　　Protective Order**

8　　　　Even though Strike 3 is entitled to a pre-discovery subpoena, the Court retains authority

9　under Federal Rule of Civil Procedure 26(c) to grant a *sua sponte* protective order for good cause.

10　*See, e.g.*, *McCoy v. Sw. Airlines Co.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002); Fed. R. Civ. P. 26(c).

11　In this case, the Court finds that there is good cause to implement limited protective measures to

12　shield a potential innocent and unwitting ISP subscriber from undue prejudice.  Strike 3 does not

13　oppose establishing procedural safeguards to respect privacy interests.  Appl. 12–13.

14　　　　Consistent with the protective measures undertaken by many other courts in this district,

15　the Court will employ procedures to treat as confidential any personal information regarding the

16　Doe Defendant that Spectrum produces to Strike 3.  The Court will also permit and consider any

17　request by the Doe Defendant to proceed anonymously under a pseudonym.

18　**IV.　CONCLUSION**

19　　　　Based on the foregoing, the Court GRANTS Strike 3's Ex Parte Application with respect

20　to Defendant Doe, Subscriber Assigned IP Address 102.129.252.102, as follows:

21　　　1. Strike 3 MAY serve a Rule 45 subpoena on Spectrum ("ISP"), commanding the ISP to

22　　　　　provide Strike 3 with the true name and address of the Defendant to whom the ISP

23　　　　　assigned an IP address as set forth on Exhibit A to the Complaint.  Strike 3 SHALL

24　　　　　attach a copy of this Order to any such subpoena.

25　　　　　a.  Strike 3 MAY serve a Rule 45 subpoena in the same manner as above on any

26　　　　　　　service provider that is identified in response to a subpoena as a provider of

27　　　　　　　Internet services to the Defendant.

28　　　　　b.  If the ISP qualifies as a "cable operator" per 47 U.S.C. § 522(5), then it shall

United States District Court
Northern District of California

United States District Court
Northern District of California

comply with 47 U.S.C. § 551(c)(2)(B) by sending a copy of this Order to

Defendant.

2.  Within thirty (30) days of being served by Strike 3, the ISP SHALL serve the Doe

Defendant subscriber assigned the IP address 102.129.252.102 with a copy of the

subpoena and this Order.

3.  Within thirty (30) days after he or she has been served with the subpoena and this

Order, the Doe Defendant MAY file a motion to contest the subpoena, including a

motion to quash or modify the subpoena.  **The Doe Defendant MAY appear and**

**proceed before this Court under a pseudonym by requesting that their personal**

**identifying information be filed under seal**.

    a.  If the Doe Defendant does not contest the subpoena within thirty days, the ISP may

       produce the information responsive to Strike 3's subpoena within ten (10) days.

4.  Strike 3 MAY only use the information disclosed in response to its subpoena for the

purpose of protecting and enforcing its rights as set forth in the Complaint.  Strike 3

MAY NOT publicly disclose the information obtained from its subpoena without leave

of this Court.  All references to the Doe Defendant's identity SHALL be redacted and

filed under seal until further notice.

5.  Spectrum or any other ISP that receives a subpoena pursuant to this Order SHALL

confer with Strike 3 and MAY NOT assess any charge in advance of providing the

information requested in the subpoena.  The ISP that receives a subpoena and elects to

charge for the costs of production must provide a billing summary and cost reports that

serve as a basis for the billing summary and costs claimed by the ISP.

6.  Spectrum or any other ISP that receives a subpoena pursuant to this Order SHALL

preserve any subpoenaed information pending the resolution of any timely filed motion

to dismiss.

**IT IS SO ORDERED.**

6

Dated: December 19, 2024

Edward J. Davila
United States District Judge

United States District Court
Northern District of California